

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FILED

FEB 2 0 2020

Clerk, U.S. District Court
Eastern District of Texas

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | No. 4:19CR280 |
| v. | § | Judge Mazzant |
| | § | |
| PINGHUA LEI | § | |
| a/k/a Neil Lei | § | |

## FACTUAL STATEMENT

IT IS HEREBY STIPULATED by **Pinghua Lei, also known as Neil Lei (Lei),** defendant herein, that the following facts are true and correct, and that he understands and agrees, with the express consent of his counsel, **Keith Gore,** that this Factual Statement may be used by the Court to determine whether his plea is voluntary and knowing and by the probation officer and Court to determine an appropriate sentence for the offense to which he is pleading guilty.

The defendant stipulates to the following statement of facts to provide the Court with a sufficient factual basis to accept a plea of guilty pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, and agrees that this statement represents what the government could prove at a trial beyond a reasonable doubt:

1. The Defendant, **Lei,** who is changing his plea to guilty is the same person charged in the Indictment.

2. Beginning in or about January 2012 and up to October 6, 2017, the Defendant, **Pinghua Lei**, a Chinese national, was employed by the Natural Polymer International Corporation in Plano, Texas ("NPIC"), as a food research scientist in the

PL

NPIC Research and Development ("R&D") Department. For the relevant period, NPIC was an established domestic and international business engaged in the manufacturing and distribution of natural pet treat products and maintained its primary domestic U.S. facility and office in Plano, TX. While working at NPIC as a R&D food scientist, **Lei** reported to and was supervised by a fellow NPIC employee named J.Z. Prior to 2012, **Lei** had resided in China, graduated from Sichuan University with a Food and Science Degree in 2005, and had been employed by NPIC at its Zhongshan City facility ("NPIC-China"). Following his transfer to the U.S., **Lei** obtained a H1B visa work permit, and while he remained a Chinese citizen, on April 30, 2016, **Lei** became a U.S. Legal Permanent Resident Alien.

3.  **Lei** first met J.Z. in China while working with NPIC-China at its Zhongshan City facility. In or around 2011 J.Z. was involved in hiring **Lei** from the NPIC-China facility to work at the NPIC Plano, TX, facility. **Lei** worked with J.Z. at the NPIC Plano facility up to October 2017, and knew that J.Z. left NPIC in November 2017.

4.  On September 25, 2017, **Lei** submitted to J.Z., as his NPIC supervisor, a letter of resignation from NPIC. On October 6, 2017, **Lei** left NPIC. While employed by NPIC, **Lei** had signed several NPIC Non-Disclosure Agreements in which he agreed (i) not to reveal or use any NPIC information, including trade secrets, to the benefit of other parties, including himself, that he acquired while working at NPIC, and (ii) to return all NPIC trade secrets to the company prior to any departure from the company.

5.  In or about mid-October 2017, **Lei** began working at Gambol Pet USA (GPUSA) in California as a R&D Manager and Senior Scientist. GPUSA was a pet treat

*PL*

manufacturer and distributor located in Perris, California, and a direct business competitor to NPIC. GPUSA began domestic U.S. operations in or about April 11, 2017. GPUSA was the wholly owned subsidiary of Gambol Pet Group (GPG), a Chinese enterprise based in Shandong Province, China, and was the largest provider of private-label pet treats in the U.S. and Canada for domestic U.S. companies such as Walmart. GPG was a direct business competitor to NPIC in both the domestic and international pet treat markets.

6. **Lei** was aware in October 2017 that J.Z. resigned from NPIC, left the company in November, and began employment at GPUSA in mid-November 2017. While employed at GPUSA, **Lei** worked with J.Z. who held the position of Chief Operating Officer and Chief Technology Officer.

7. Prior to leaving NPIC and continuing into 2018, specifically in or about July 2017 and continuing through April 2018, with the intent to convert NPIC trade secrets to the economic benefit of another, **Lei** did knowingly (i) copy, duplicate, download, replicate and communicate without authorization; and (ii) receive or possess, knowing the same to have been appropriated, obtained or converted without authorization, NPIC electronic data and information that constituted NPIC trade secrets regarding a product known as Twistix Milk & Cheese Dental Chew Sticks (the "TMC Sticks"); and further attempted to and conspired with J.Z. to steal and possess said NPIC trade secrets.

8. In furtherance of this scheme, on September 25, 2017, approximately two hours prior to **Lei's** submission of his resignation from NPIC, he copied and downloaded

a large number of computer files from the NPIC computer system, commonly referred to as the Research and Development folder (the "NPIC R&D Folder"). **Lei** copied the data and information contained in the NPIC R&D Folder to a personal computer data storage device USB-006/General USB Flash Disc.

9. **Lei** knew that the NPIC R&D Folder contained an extensive amount of NPIC confidential, sensitive and proprietary information relating to multiple NPIC pet treat products, including the TMC Sticks. Further, **Lei** knew that NPIC maintained several data and information security means, mechanisms, and protocols to restrict access to the NPIC R&D Folder to three NPIC R&D Department employees (apart from two IT Department employees who had access) with work responsibilities relating to specific products and, thus, had "need to know" and needed to access such protected data and information. In fact, NPIC did maintain significant and reasonable computer security measures to protect the access to and use of the NPIC R&D Folder.

10. On September 28, 2017, J.Z. copied and downloaded a large number of NPIC computer files from the NPIC R&D Folder into his personal computer storage device known as a USB HNT-011 thumb drive.

11. During the September to December 2017 J.Z. discussed and directed the **Lei** to attempt to access, copy, download, and transfer NPIC R&D data to a separate storage device. **Lei** did so utilizing his own storage devices, including a personal lap top computer, which he subsequently used to conduct business while employed at GPUSA. **Lei** was aware that J.Z. was also accessing, copying and transferring NPIC R&D

information to himself for use after departing NPIC. J.Z. had told **Lei** that they should both retain this NPIC data and information after departing NPIC.

12. At multiple times in November and December 2017, continuing on through January and March 2018, **Lei**, having possession of the NPIC R&D Folder without authorization, transferred and copied the data and information contained in the NPIC R&D Folder to a lap top computer he possessed and used in the course of his work at GPUSA. **Lei** transferred the NPIC R&D data from the USB-006/General USB Flash Disc onto his lap top computer after he had left NPIC and after he began working at GPUSA.

13. At certain times, **Lei** accessed some of the NPIC data and information from the NPIC R&D Folder to use and modify such information for his benefit and use in connection with his work for GPUSA. Further, in April 2018 after being informed in connection with a civil legal action that he was required to provide all NPIC related data and information in his possession and control, **Lei** deleted and destroyed the NPIC R&D data from his personally owned lap top computer that he utilized to conduct GPUSA work and thereafter denied having had any possession of the same.

14. **Lei** was not authorized on September 25, 2017, or any time before or thereafter, to access, copy, duplicate, receive, and possess any of the secured data and information contained in the NPIC R&D Folder, which included information relating to the development, production, and testing of the TMC Sticks. NPIC was the legal owner of the data and information contained in the NPIC R&D Folder. The NPIC R&D Folder contained data and information relating to the financial, business, scientific, technical,

economic, and engineering information that included data on the plans, compilations, designs, formulas, processes, procedures, and programs relating to the production, manufacturing, testing and marketing of the TMC Sticks. As such, this information was unique to NPIC and represented information developed by NPIC that derived independent economic value, actual or potential, from not being generally known to, and not readily being ascertainable through proper means by another person. Accordingly, **Lei**, all without authorization, in September 2017 unlawfully stole by duplication and transfer certain NPIC trade secrets relating to the TMC Sticks and retained possession of such trade secrets up until at least April 2018.

### Lei's signature and acknowledgment:

I have read this Factual Statement and have discussed it with my attorney. I fully understand the contents of this Factual Statement and agree without reservation that it accurately describes the events and my acts.

Dated: 01/20/2020

*Pinghua Lei*
PINGHUA "NEIL" LEI, also known as
Neil Lei, Defendant

**Counsel for the Defendant's signature and acknowledgment:**

I have read this Factual Statement and have reviewed it with my client, **Pinghua Lei, also known as Neil Lei**. Based upon my discussions with **Lei**, I am satisfied that he understands the Factual Statement.

Dated: 1.20.20

_____
KEITH GORE
Attorney for the Defendant